UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTEGRATED CONNECTION, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>FORTNA, INC.,<br><br>    Defendant. | Civil Action No. 1:25-cv-7904<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Integrated Connection, LLC ("Plaintiff"), for its Complaint against Defendant FORTNA, Inc. ("Defendant" and, together with Plaintiff, the "Parties"), states and avers as follows:

## NATURE OF THE ACTION

1. This is an action for breach of contract. This action arises because of Defendant's breach of an agreement between Plaintiff and Defendant wherein Defendant is obligated to pay for services rendered by Plaintiff as described below.

## THE PARTIES

2. Plaintiff is an Iowa limited liability company with its principal place of business at 306 6th Ave. SE, Cedar Rapids, Iowa 52401.

3. Defendant is a Pennsylvania corporation with its principal place of business at 1349 Peachtree St. NW, Suite 1300, Atlanta, Georgia 30309.

## JURISDICTION, VENUE, AND GOVERNING LAW

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds $75,000, exclusive of interests and costs, and Plaintiff and Defendant are citizens of different states.

5. Plaintiff is a limited liability company with only two members, each of them individuals: Stephen Louis Belland, who is a resident of the State of Florida, and Muhannad Ahmad Abu-Nameh, who is a resident of the State of Iowa. For purposes of diversity of citizenship, Plaintiff is a citizen of Florida and Iowa.

6. Defendant is a corporation incorporated in the Commonwealth of Pennsylvania and having a principal place of business in the State of Georgia. For purposes of diversity of Citizenship, Defendant is thus a citizen of Pennsylvania and Georgia.

7. Accordingly, there is complete diversity of citizenship between Plaintiff and Defendant.

8. Venue is proper in this Court pursuant to Section 34 of the Agreement (defined below) between the Parties, which provides that the "Parties irrevocably submit to the exclusive jurisdiction of the courts of New York" and that each "Party hereby irrevocably waives any objection it may now or hereafter have to the laying of venue of any suit, action, or proceeding relating to this Agreement." Section 34 of the Agreement further provides that "the rights or obligations of the Parties are hereby governed by the laws of the State of New York to the extent not inconsistent with applicable federal laws, without regard to any conflict of laws principles."

## FACTUAL BACKGROUND

9. Plaintiff is a leading transportation broker. Plaintiff provides third-party logistics services to its customers, arranging for and managing the transportation of its customers' freight.

10. Upon information and belief, Defendant is a materials handling company in the business of providing warehousing, storage, and packaging services.

11. The Parties have had a business relationship for eight years in which Plaintiff has provided transportation brokerage and freight management services to Defendant.

12. Before October 2023, Plaintiff provided such services to Defendant based on agreed-upon rate quotes and purchase orders.

13. On October 11, 2023, the Parties entered into that certain Broker-Shipper Agreement No. 07012023 (the "Agreement"), memorializing the terms of the Parties' business relationship. A copy of the Agreement is not attached because it contains a confidentiality provision but Defendant has a copy of the Agreement in its possession.

14. At its core, the Agreement memorialized Defendant's desire to utilize Plaintiff's logistics and transportation management services for daily logistics coordination and arrangement of Defendant's freight in interstate and international commerce.

15. Following the execution of the Agreement—and for the six years prior—Plaintiff provided first in class logistics services to Defendant.

16. In one notable instance, in or around November 2024, Defendant came to Plaintiff in the middle of a large project involving Defendant's shipment of products from locations with the United States to locations in Poland and the Czech Republic for use in large-scale construction projects. At the time, Defendant was using the services of another transportation provider.

17. Dissatisfied with its other provider's services, Defendant asked that Plaintiff take over mid-way through the project to arrange for the transportation of Defendant's freight and ensure delivery under tight time constraints.

18. Plaintiff achieved Defendant's desired results, and all shipments were timely delivered without incident.

19. As recently as July 18, 2025, one of Defendant's representatives acknowledged to Plaintiff that Plaintiff got Defendant out of a bind on short notice.

20. Plaintiff issued its invoices to Defendant regularly upon the completion of Defendant's shipments.

21. During the term of the Agreement—and for the six years prior, Defendant never expressed displeasure with Plaintiff's services or the rates that it charged.

22. On July 10, 2025, however, Defendant unexpectedly informed Plaintiff that it was holding payment on all of Plaintiff's outstanding invoices. Defendant's stated basis for doing so was that Plaintiff allegedly overcharged Defendant for its services and that Plaintiff was "price gouging" Defendant, but Defendant has not stated with any particularity its basis for that allegation.

23. This accusation caught Plaintiff by surprise because, prior to that date, Defendant did not notify Plaintiff at any time that it was unhappy with the rates Plaintiff charged. Indeed, as recently as July 3, 2025, Defendant's accounting department had represented to Plaintiff that Defendant's payment of all outstanding invoices was forthcoming.

24. To be sure, Defendant utilized Plaintiff's services during the term of the Agreement—and in the years preceding the agreement—without complaint.

25. Pursuant to Section 25 of the Agreement, Defendant could have engaged another transportation broker's services without penalty if it did not want to pay the rates required by Plaintiff to provide first in class service to transport Defendant's shipments.

26. Despite having the ability to obtain logistics services from another provider, Defendant continued to utilize Plaintiff's services without complaint. Indeed, as recently as the week of July 7, 2025—*after* notifying Plaintiff that Defendant was holding payments— Defendant asked Plaintiff to arrange for the transportation of Defendant's shipments.

27. At no time prior to July 10, 2025 did Defendant tell Plaintiff that it was not going to pay Plaintiff for the services that Plaintiff provided.

28. To the extent that Defendant objected to any amounts invoiced by Plaintiff, Defendant was required to provide written notice to Plaintiff within ten (10) days of the invoices date, giving the basis for Defendant's objection. *See* Agreement § 3.

29. For the vast majority of the invoices that Defendant disputes, Defendant failed to provide written notice to Plaintiff in accordance with Section 3 of the Agreement.

30. In any event, Defendant has no legitimate bases to dispute Plaintiff's charges. Under Section 3 of the Agreement, Plaintiff was to invoice Defendant per the rates set forth in the Agreement, "unless otherwise agreed upon between the Parties in advance of tender." Throughout the term of the Agreement, Plaintiff has done just that, and Defendant has agreed to Plaintiff's rates when requesting Plaintiff's services.

31. For the past two months, despite there being no legitimate dispute over the veracity of Plaintiff's charges, Plaintiff has patiently negotiated with Defendant to reach an agreement for Defendant's payment of outstanding invoices. Defendant has made—and then reneged on—multiple commitments to pay Plaintiff the amounts that Defendant owes. It has now become clear that Defendant will not pay Plaintiff unless a court compels Defendant to do so.

32. As of the date of filing this Complaint, Defendant owes Plaintiff Three Million Eight Hundred Two Thousand Three Hundred Twenty-Five Dollars and Seventy-One Cents ($3,802,325.71) (the "Arrears").

33. Under Section 3 of the Agreement, Defendant is obligated to pay Plaintiff's Invoices within thirty (30) days of the original invoice date. The Arrears are comprised of invoices that are dated and were issued more than thirty (30) days ago.

34. Despite demand, Defendant has failed to pay the Arrears.

## COUNT ONE
### (Breach of Contract)

35. Plaintiff incorporates by reference paragraphs 1-34 above as if fully set forth here.

36. Plaintiff and Defendant entered into the Agreement, which is a valid and enforceable contract.

37. At all relevant times, Plaintiff fully and satisfactorily performed all of its obligations according to the terms of the Agreement, and all conditions precedent to Plaintiff's recovery of the outstanding amount have occurred.

38. Defendant breached its contractual obligations under the Agreement by failing to pay the Arrears.

39. Defendant has failed and refused, and continues to fail and refuse, to tender to Plaintiff all payments owed for the services rendered by Plaintiff to Defendant.

40. Consequently, Plaintiff is entitled to recover damages from Defendant in an amount to be proven at trial but not less than Three Million Eight Hundred Two Thousand Three Hundred Twenty-Five Dollars and Seventy-One Cents ($3,802,325.71), plus pre-judgment and post-judgment interest as allowed by law, costs, and reasonable attorneys' fees.

## COUNT II
### (Unjust Enrichment – Stated in the Alternative to Count I)

41. Plaintiff incorporates by reference paragraphs 1-34 above as if fully set forth here.

42. As described above, Plaintiff has provided transportation brokerage services to Defendant at Defendant's request.

43.     Plaintiff's provision of these services to Defendant has benefited Defendant, in that Defendant was able to meet its obligations to its customers and receive payment from its customers as a result of Plaintiff's services.

44.     Defendant obtained this benefit at Plaintiff's expense, as Plaintiff has paid third parties for the transportation of Defendant's products and other ancillary costs.

45.     Defendant's retention of Plaintiff's services without compensating Plaintiff for the same is unjust.

46.     Defendant has not paid Plaintiff for the services provided.

47.     The services provided by Plaintiff to Defendant are reasonably worth not less than Three Million Eight Hundred Two Thousand Three Hundred Twenty-Five Dollars and Seventy-One Cents ($3,802,325.71).

48.     Consequently, Plaintiff is entitled to recover damages from Defendant in an amount to be proven at trial but not less than Three Million Eight Hundred Two Thousand Three Hundred Twenty-Five Dollars and Seventy-One Cents ($3,802,325.71), plus pre-judgment and post-judgment interest as allowed by law, costs, and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Integrated Connection, LLC demands judgment in its favor and against Defendant FORTNA, Inc. on all claims for relief and providing the following:

1.     Enter Judgment in favor of Plaintiff Integrated Connection, LLC and against Defendant FORTNA, Inc. as to Plaintiff's Count I in an amount to be determined at trial, but not less than Three Million Eight Hundred Two Thousand Three Hundred Twenty-Five Dollars and Seventy-One Cents ($3,802,325.71), plus pre-judgment and post-judgment interest as allowed by law, costs, and reasonable attorneys' fees;

2.      As an alternative to Count I, enter judgment in favor of Plaintiff Integrated Connection, LLC and against Defendant FORTNA, Inc. on Plaintiff's Count II in an amount to be determined at trial, but not less than Three Million Eight Hundred Two Thousand Three Hundred Twenty-Five Dollars and Seventy-One Cents ($3,802,325.71), plus pre-judgment and post-judgment interest as allowed by law, costs, and reasonable attorneys' fees;

3.      Enter judgment against Defendant FORTNA, Inc. for any and all other relief (including, but not limited to, reasonable attorneys' fees and costs) that the Court deems just, reasonable, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury, by the maximum number of jurors permitted by law, on all issues so triable herein.

Dated: September 23, 2025
Wilmington, Delaware

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

 /s/ *John C. Gentile*
John C. Gentile (NY Reg. No. 6138028)
1155 Avenue of the Americas, 26th Floor
New York, NY 10036
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
jgentile@beneschlaw.com

*Counsel for Plaintiff Integrated Connection, LLC*